IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC HALL, | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-10-1738 |
| vs. | : |
| | : (Judge Caldwell) |
| JOSEPH PIAZZA, *et al.*, | : |
| Defendants | : |

*M E M O R A N D U M*

I.   *Introduction*

Eric Hall, an inmate at SCI-Somerset in Somerset, Pennsylvania, filed a pro se complaint, alleging he was issued false and retaliatory misconducts while he was housed at SCI-Coal Township, for the explicit purpose of prolonging his disciplinary confinement in segregated housing.  He also alleges he was denied meaningful access to the courts during his stay in segregated housing resulting in the untimely filing of a federal habeas corpus petition challenging his underlying state conviction.

He names as defendants the following employees of the Pennsylvania Department of Corrections (DOC) at SCI-Coal Township:  Joseph Piazza, former Superintendent; David Varano, present Superintendent; Robert McMillan, Deputy Superintendent for Facilities Management (DSFM); David McAnnaney, Major of the Guard; Moyer, Restricted Housing Unit (RHU) Lieutenant; Claudfelter, RHU Sergeant; George Burns, RHU Sergeant; B.E. Richy, RHU Sergeant; Corrections Officer (CO) Charles Butts; CO Michael Batiuk; CO Leonard; CO Ferretti; and CO Betz.  All defendants are sued in their individual capacities.   Doc. 14, Am. Compl. at ¶¶ 2-12.  Only defendant Varano is

sued "in his official capacity for injunctive relief." *Id*. at ¶ 13.

We are considering Defendants' motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) based on the statute of limitations and Hall's failure to allege the personal involvement of the named defendants in the underlying constitutional claims.

For the following reasons, Defendants' motion is granted in part and denied in part.

II.   *Standard of Review*

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)(citing *Pension Benefit Guar. Corp. v. White Consol. Indust.*, 998 F.2d 1192, 1196 (3d Cir. 1993). We "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

A plaintiff's pleading obligation is to set forth "a short and plain statement of

the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).  To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.  If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

Pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  Pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).  A claim that cannot overcome the statute of limitations renders a proposed amendment futile.  *Cowell v. Palmer Twp.,* 263 F.3d 286, 296 (3d Cir. 2001).

III.   *Background*

The Amended Complaint (doc. 14) alleges as follows.[1]  Hall was convicted of robbery and related offenses in January 2003.  Doc. 14 ¶ 17.  In September 2003 he was

---

[1] Although Hall references a series of exhibits within his Amended Complaint, they were not filed with the court.

-3-

sentenced to seven to fourteen years of incarceration. *Id*. ¶ 18. On October 9, 2005, while at SCI-Frackville, he was given a misconduct sanction of 150-days DC. *Id*. ¶ 22. Within a year, Hall's DC time increased to the point that SCI-Frackville staff recommended his transfer to the Special Assessment Unit (SAU) at SCI-Waymart for a psychiatric evaluation. *Id*. ¶ 26. Hall was transferred to SCI-Waymart on November 1, 2006 and remained there until December 21, 2006. *Id*. ¶ 27.

When he returned to SCI-Frackville's RHU, Hall complained to defendant Varano that staff had issued him false misconducts. *Id*. ¶ 29. Varano did little to investigate, but told Plaintiff to be thankful for the "six month time cut" off his DC time that staff had granted him. *Id*. ¶¶ 23, 29 and 30. Hall learned that the time cut was "provisional" and could be taken away if he incurred negative block card reports or additional misconducts. *Id*. ¶ 30. At some point, Hall received several false and retaliatory misconducts extending his DC time. *Id*. ¶ 31.

On May 14, 2007, Hall was transferred from SCI-Frackville's RHU to SCI-Coal Township's RHU. *Id*. ¶ 33. At the time, Hall had accrued 1,770 days of disciplinary time. His transfer was a "fresh start nonetheless." *Id*. ¶¶ 33-34. Upon his arrival, SCI-Coal Township advised him that pursuant to DC-ADM 801, *Inmate Discipline Procedures Manual*, if he remained misconduct free for one year they would release him to general population. *Id*. ¶ 34.

At some point in 2007, defendant Varano was also transferred from SCI-Frackville to SCI-Coal Township. *Id*. ¶ 36. From the moment Varano arrived at SCI-Coal Township he "began to infect the newer members of the [Program Review Committee

(PRC)] and" officers formerly "unfamiliar with plaintiff's past history." *Id*. ¶ 38. Up to then, "besides an isolated incident or two, plaintiff had kept a low profile and was on the road to desegregate himself back into general population." *Id*. ¶ 38. On August 27, 2008, Hall received a six-month reduction of his 1,815 cumulative DC sanction. *Id*. ¶ 39. By this time defendant Varano had been promoted to Superintendent of SCI-Coal Township and no longer participated in PRC reviews. *Id*. ¶ 40. However, Varano instructed defendant McMillian to take "baby steps" when reducing Hall's disciplinary time. *Id*. ¶ 40.

Nonetheless, Hall remained positive and misconduct free in anticipation of being released to general population at his next PRC review. *Id*. ¶ 41. However, at his September 2008 review, Hall "only received a six month time reduction with a disciplinary custody expiration date of January 29, 2010." *Id*. ¶ 42. Defendant McMillian advised Hall he would be released from the RHU at his next PRC review if he remained misconduct free. *Id*. ¶ 43. "Plaintiff explained desperately to defendants Varano and McMillan that plaintiff had been experiencing some problems from the RHU staff because of his complaining and grieving the lack of meaningful law library access and the officer's actions in denying plaintiff yard, showers, and other entitlements." *Id*. ¶ 44. He feared that if forced to remain in the RHU, he would stand out in the small group of RHU inmates, and staff "may try to punish plaintiff by issuing him fabricated misconducts." Defendant McMillan overlooked Plaintiff's concerns. *Id*. ¶ 45.

The day before Hall's next PRC review, he received two fabricated and retaliatory misconducts from different RHU staff members. *Id*. ¶ 46. As a result of these misconducts, Hall received 90 days' additional disciplinary custody time. *Id*. ¶ 47.

At his PRC review, McMillian advised Hall that if he remained misconduct free for ninety days he would formulate a plan for his early release from the RHU.  Although Hall attended his next monthly PRC review misconduct free, defendant McMillian raised the bar for Hall's early release from the RHU by requiring him to maintain satisfactory block reports in addition to remaining misconduct free.  *Id*. ¶ 49.  Frustrated by this "entire ordeal," Hall filed a complaint with the Secretary of the DOC.  *Id*. ¶ 50.  Plaintiff was finally released from SCI-Coal Township's RHU in June 2009.  *Id*. ¶ 51.

Hall claims that his punitive confinement in the RHU "for all those years hindered" him from obtaining meaningful access to the courts resulting in his untimely filing of his federal habeas corpus petition.[2]  *Id*. ¶ 52.  Hall states he was denied sufficient time in the RHU law library as well as adequate legal assistance during his prolonged RHU DC status.  *Id*.  On February 2, 2005, after filing a pro se state postconviction petition, Hall was assigned counsel who filed an amended petition but concluded his representation on Hall's behalf on October 31, 2007, when the state-court petition was denied.  *Id*. ¶¶ 54-55.  Counsel suggested that Hall had one year in which to file his federal habeas petition.  *Id*. ¶ 56.

During his RHU incarceration at SCI-Coal Township from May 14, 2007, through June 2009, Hall actively litigated as many as seven legal actions.  *Id.* ¶ 60.  When

---

[2] The court takes judicial notice of *Hall v. Varano*, No. 08-4996, 2009 WL 737355 (E.D. Pa. Mar. 19, 2009) which denied Hall's petition under 28 U.S.C. § 2254 as untimely on March 19, 2009. In doing so, the court there rejected Hall's argument that the statue of limitations should be equitably tolled, an argument based in part on his alleged lack of "meaningful access" to the prison law library.  *Id*. at *2-3.  The Third Circuit denied a certificate of appealability on August 11, 2009, and a petition for rehearing en banc on January 11, 2010.  The Supreme Court denied a petition for certiorari on November 2, 2010.  *See Hall v. Varano*, C.A. No. 09-2005 (3d Cir.).

permitted to attend the RHU law library, Hall attempted to research the statute of limitations but was unable to understand the legal jargon surrounding the tolling periods and the procedures to file a habeas petition.  *Id*. ¶ 57.

In June 2007, Hall sent request slips to defendant Richy requesting access to the law library.  At that time he began receiving, on average, two hours of RHU law library access a week which he "was discontent with and therefore began to complain about it." *Id*. ¶ 63.  When he asked defendant Richy for more time in the law library he was told he "would have to wait his turn like any one else."  *Id*. ¶ 65.  Plaintiff then asked defendant Moyer about receiving more time in the law library and was advised he would look into it. *Id*. ¶ 66.  In late August 2007, after requesting additional time in the library from Sgt. Fogelman, Hall was scheduled to attend multiple sessions in law library each week.  *Id*. ¶ 68.  Moyer later rescinded his priority access to the law library, telling Plaintiff "he could cry to whom ever he wanted to about" it.  *Id*. ¶ 69.  Hall commenced giving his law library requests to defendants Butts and Batiuk.  *Id*. ¶ 70.  After inquiring why he was not scheduled for the law library, these officers denied ever receiving any requests from Hall. *Id*. ¶ 71.

Plaintiff's attempts to have Supt. Piazza intercede on his behalf and allow him additional law library were unsuccessful.  *Id*. ¶ 72.  Up to this point, Plaintiff was receiving legal assistance from random inmates who passed through the RHU.  *Id*. ¶ 76.  However, at one point Hall found a particular RHU inmate he believed would be helpful in filing his habeas petition.  Plaintiff's requests to be scheduled for the law library at the same time as this other inmate were denied.  *Id*. ¶¶ 75-77.  Several weeks passed and Plaintiff learned

that the Pennsylvania Supreme Court had denied his request for postconviction relief.  *Id*. ¶ 80.[3]

After returning from one of his ATAs,[4] Hall gave request slips to Leonard, Mcannaney and Fogelman, seeking access to the RHU mini law library.  *Id*. ¶¶ 88-93.  He also filed a grievance concerning his lack of adequate access to the law library.  *Id*. ¶ 92.  After these events, Hall was then granted "an extra visit or so" for a couple of weeks.  *Id*. ¶ 95.  However, because of his numerous legal actions and "the overwhelming research that had to be done" for his habeas petition, "plaintiff continued to badger defendant McMillan and Varano about gaining jailhouse lawyer assistance and additional law library access."  *Id*. ¶ 101.  In March 2008, Hall was "still receiving only 2 hours a week in the law library."  *Id*. ¶ 103.  For a brief period of time, due to the intervention of a DOC Assistant Counsel, Hall received "five (6) hour stretches weekly" of law library access.  *Id*. ¶ 106.  Defendant Burns terminated these extended sessions at the direction of Varano who later denied ever giving such an order to Burns.  *Id*. ¶ 111.

Defendants Leonard, Ferretti, Betz, Batiuk and Burns then began covering up the names of inmates who signed up for access to the RHU mini law library so Hall could not ascertain the names or frequency of other inmates utilizing the RHU law library.  *Id*. ¶ 112.  Hall claims defendants Burns, Betz and Ferretti falsified the RHU law library log to reflect Hall was given more than "the minimum amount afforded to an inmate" in the law

---

[3] The Pennsylvania Supreme Court declined to review Hall's PCRA petition on October 30, 2007. *Id.*  ¶ 55; *see also Hall*, 2009 WL 737355.

[4] An ATA is an authorized temporary absence.  Plaintiff had three ATAs from SCI-Coal Township.  *See Id.*  ¶¶ 61, 67, and 85.

-8-

library when he was not. *Id*. ¶ 114.

At some point, defendant McMillian advised that the RHU mini law library was being modified so that two RHU inmates could utilize the area at the same time and verbally communicate with each other. *Id*. ¶¶ 115 and ¶117. In early June 2008, due to remodeling, the RHU mini law library was unavailable to all RHU inmates for a period of two weeks. *Id*. ¶ 116. Hall registered his "gripe" with defendants McCoy and McMillan and filed a grievance on the issue. *Id*. Once reopened, Hall was not permitted to simultaneously attend the law library with another inmate who could assist him with the preparation of his habeas petition. *Id*. ¶ 117. As the law library was not modified to defendant McMillan and Varano's liking, inmates untrained in the law like Hall, were not permitted to work together in the RHU mini law library and thus denied meaningful access to the courts. *Id*. ¶ 118.

In June 2008, Hall also learned that his request for assistance from a staff paralegal and an outside private criminal attorney were denied. *Id*. ¶¶ 119-121. However, the outside criminal attorney forwarded him some "beneficial" information as to the federal habeas statute of limitations. *Id*. ¶ 122. In mid-2008, Hall prepared a detailed request slip to the SCI-Coal Township Inmate Law Clerk related to the preparation of a habeas corpus petition and the statute of limitations. Unfortunately, the legal response was "too confusing to understand and frustrated plaintiff." *Id*. ¶ 123.

September 30, 2008, was the earliest Hall could file his habeas petition. *Id*. ¶ 126. The reviewing court held that Hall's petition was untimely as it was filed after August 20, 2008. *Id*. ¶¶ 127-28.

IV.     *Discussion*

       A.     *Statute of Limitations*

As noted, Plaintiff has made two claims, a claim for malicious and retaliatory RHU confinement and a claim for denial of access to the courts. Defendants argue that both claims are barred by the statute of limitations. The statute of limitations for a § 1983 claim is the particular state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 390 n.3, 127 S.Ct. 1091, 1095 n.3, 166 L.Ed.2d 973 (2007). In Pennsylvania, the statute of limitations applicable to Hall's § 1983 claims is two years. *See Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). Pursuant to the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 2384-85, 101 L.Ed.2d 245 (1988), we will consider the original complaint as being filed on August 17, 2010, even though received and docketed by the Clerk of Court on August 19, 2010. Thus, according to defendants, any claims raised by Plaintiff arising from events that occurred before August 17, 2008, are barred by the statute of limitations unless the statute is tolled for some reason. Conversely, Plaintiff asserts he is entitled to equitable tolling of the limitations period under the continuing violation doctrine as all of his claims involved continuing and repeated wrongdoings. Doc. 26, Opp'n Br. at CM/ECF p. 13.[5]

"Under the continuing violation doctrine, 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for

---

[5] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

the earlier related acts that would otherwise be time barred.'" *Zankel v. Temple Univ.*, 245 F. App'x. 196, 198 (3d Cir. 2007)(quoting *Brenner v. Local 514, United Bd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)).  For a claimant to reap the benefits of the continuing violation doctrine, a defendant's actions must be "'more than the occurrence of isolated or sporadic acts." *Cowell v. Palmer Twp.,* 263 F.3d 286, 292 (3d Cir. 2001)(quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)).  The Third Circuit noted that "[t]he focus of the continuing violations doctrine is on affirmative acts of the defendants," *id*. at 293, and sets forth three factors to be considered when determining the applicability of the doctrine for the purpose of tolling the statue of limitations:

> (1) subject matter - whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292 (citing *West*, 45 F.3d at 755 n.9).  The third factor has been identified as the most important for a court's consideration.  *Id.* at 293.  "[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."  *Id*. at 295.

       1.    *False and Retaliatory Misconducts Leading to Hall's Punitive RHU Confinement*

Plaintiff claims he was subjected to false and retaliatory misconducts from October 9, 2005, until June 2009 which led to his restricted confinement.  He claims that

defendants Varano and McMillian were deliberately indifferent to his pleas to prevent staff from filing false and retaliatory misconducts against him. *Id*. at p. 14.

Hall is not entitled to the application of the continuing violation doctrine for claims arising before August 17, 2008.  Hall allegedly received a multitude of retaliatory or false misconducts, issued by a variety of individuals at two separate facilities over a span of four years.  The fact that each misconduct was issued independently, by different staff, at different facilities, negates any reasonable inference that the decisions to issue the misconducts represent a systemic effort to harm or retaliate against him.  Moreover, there was an eleven-month period, according to Hall, during which he did not receive any misconducts.  This fact further supports the isolated and sporadic, not interrelated and frequent, nature of the issuance of alleged false and retaliatory misconducts.  Each decision was discrete, with its own consequences relative to Hall's RHU confinement that Hall had the opportunity to appeal via the Department of Corrections (DOC) misconduct appeal process and file suit if desired.  Consequently, any claim based on Varano's or McMillan's failure to intervene and prematurely release him prior to the expiration of his earned disciplinary custody sentence for events occurring prior to August 17, 2008, will also be dismissed.

Nowhere in the amended complaint does Hall state that either Varano or McMillan issued him a misconduct, false, retaliatory or otherwise.  However, it appears from the allegations of this pro se amended complaint that Hall seeks to assert a claim based on his continued confinement in the RHU based on his receipt of bogus misconducts.  Yet, his present complaint fails to name those individuals responsible for issuing him such misconducts.  Accordingly, Hall will be granted twenty-one days to submit

a complete amended complaint which identifies those individuals who issued him false or retaliatory misconducts after August 17, 2008, and that satisfies the requirements of Rules 8 and 20. The second amended complaint shall set forth each claim separately and name only the defendants in each claim that Plaintiff seeks to hold liable for that specific claim. The factual allegations that support each claim shall also be set forth in separate numbered sentences.

Hall is also advised that the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Failure to file an appropriate amended complaint will result in the dismissal of his action without prejudice.

### 2.   *Access-to-the-Courts Claim*

Hall claims that Defendants' repeated denials of his requests for additional time in the institution's RHU mini law library, or access to the law library with the assistance of another RHU inmate, denied him meaningful access to the courts, causing him to file his federal habeas corpus petition late.

On the implicit reasoning that a civil-rights claim requires personal involvement, Defendants assert that Hall's access-to-the-courts claim accrued on May 14, 2007, the date he arrived at SCI-Coal Township, and as such is barred by the statute of limitations. Doc. 17, Defs.' Br. in Supp. Mot. to Dismiss at p. 9. Hall counters that Defendants' continued interference in his meaningful access to the RHU mini law library continued through at least August 20, 2008, the date his habeas petition was due. Thus

this claim is timely. Doc. 26, Opp'n Br. at p. 20.

The court concludes that this claim is timely. The statute of limitations is borrowed from state law, but federal law governs when the cause of action accrues and hence when the statute begins to run. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* The court believes the accrual date for Plaintiffs' access-to-the-courts claim is November 2, 2010, the date the Supreme Court denied Hall's petition for a writ of certiorari on whether he should have been allowed to pursue his federal habeas petition.[6] It was only then that he sustained the injury that forms the basis of his access-to-the-courts claim. *See Shabazz v. Johnson*, 64 F. App'x 417, 417 (5th Cir. 2003)(per curiam) (nonprecedential) (section 1983 complaint seeking redress for denial of access to the courts for a habeas petition was timely when filed within two years of the Supreme Court's denial of certiorari on the habeas petition, concluding that the relevant injury did not occur until denial of certiorari); *see also Daker v. Ferrero*, No. 03-2526, 2008 WL 822190, at *7 (N.D. Ga. Mar. 26, 2008)(following *Shabazz*). Plaintiff's original complaint was therefore timely as it was filed on August 17, 2010, even before the cause of action accrued. Accordingly, Defendants' motion to dismiss Hall's access-to-the-courts claim under the statute of limitations is denied.

### B.   Lack of Personal Involvement

---

[6] The Third Circuit did so after "fully consider[ing Hall's] arguments for tolling of the limitations period." *See Hall v. Varano,* No. 09-2005, order of Aug. 11, 2009.

Having determined the claims that survive the statute-of-limitations argument, we now examine Defendants' argument that they should be dismissed because Plaintiff has failed to allege the personal involvement of the named defendants.

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). A civil rights complaint is adequate if it states the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho*, 423 F.3d at 353. There is no respondeat superior liability in § 1983 actions. *Id.*

The Third Circuit permits Section 1983 claims to proceed based on a theory of supervisory liability where a plaintiff can show defendants had knowledge of their subordinates' violations and acquiesced in the same. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (permitting plaintiff to hold a supervisor liable for a subordinate's Section 1983 violation provided plaintiff is able to show "the person in charge ... had knowledge of and acquiesced in his subordinates' violations"). However, to impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the

-15-

offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 673 (3d Cir. 1988). Allegations of actual knowledge and acquiescence must be made with particularity. *Rode*, 845 F.2d at 1207. Additionally, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See, e. g., Rode*, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (per curiam) (nonprecedential) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Gay v. Shannon,* 211 F. App'x 113, 116 (3d Cir. 2006) (dissatisfaction with grievance responses do not state a constitutional claim); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (per curiam) (nonprecedential) (failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

        1.     *False and Retaliatory Misconducts Leading to Hall's Punitive RHU Confinement.*

Based on our earlier assessment, Plaintiff's allegations of events that occurred prior to August 17, 2008, that led to his continued RHU confinement are time barred. Post-August 2008, Hall alleges that Varano and McMillian failed to grant him early release from the RHU or prevent RHU staff from issuing him meritless misconducts. As we

have granted Hall leave to amend his complaint to name those who retaliated against him by issuing him false misconducts after August 17, 2008 and until his June 2009 (his release from the RHU), and it is possible that the new allegations may involve these defendants, we will deny without prejudice defendants' motion to dismiss these supervisory defendants based on Hall's failure to allege their personal involvement as to his continued RHU confinement.

      2.    *Access-to-the-Courts Claim.*

Defendants seeks dismissal of Hall's access-to-the-courts claim against defendants McMillan, McAnnaney and Moyer that arose during the applicable limitations period based on Hall's failure to allege their involvement in the underlying claim.

We reject this argument. The amended complaint clearly reveals that McMillan, McAnnaney and Moyer all denied requests for additional access to the law library based on Hall's expressed need to uncover information relating to the filing of his habeas corpus petition. It is clear these events occurred after the denial of his PCRA appeal and before he filed his habeas petition. Thus, on the face of the amended complaint, Defendants' motion to dismiss based on lack of McMillian, McAnnaney and Moyer's personal involvement is denied.

Nonetheless, we will dismiss the access-to-the-courts claim.[7] A civil-rights claim under section 1983 requires a plaintiff to show proximate causation. *See Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004). In this case, the court cannot reasonably infer from the allegations of the amended complaint that Plaintiffs' failure to file

---

      [7] We have the authority under 28 U.S.C. § 1915(e)(2) (B)(ii) to do so "at any time."

his 2254 petition in a timely manner was caused by his lack of access to the law library. The pertinent time period is October 31, 2007, the day after the Pennsylvania Supreme Court denied Plaintiff's appeal of his state postconviction petition, through August 20, 2008, the deadline for filing the 2254 petition, roughly nine months and three weeks.  Plaintiff alleges that during this time frame he had access to the RHU law library for two hours per week.  (Am. Compl. ¶¶ 63 and 103).  Indeed, for a brief period of time, he received five six-hour stretches of time in the library.  (*Id.* ¶ 106).  This is a minimum of eighty-two hours, sufficient time to have prepared his federal petition, a conclusion also reached by the federal habeas court.  *Hall v. Varano,* supra, 2009 WL 737355, at *2.

We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: September 22, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC HALL, | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-10-1738 |
| vs. | : |
| | : (Judge Caldwell) |
| JOSEPH PIAZZA, *et al.*, | : |
| Defendants | : |

*O R D E R*

AND NOW, this 22nd day of September, 2011, in accordance with the accompanying memorandum, it is ordered that:

    1. Defendants' motion to dismiss (doc. 16) is granted in part and denied in part.

    2. Hall's claims of receipt of retaliatory or false misconducts arising prior to August 17, 2008, are dismissed as time-barred.

    3. Hall's claims against the supervisory defendants for their failure to release him from the RHU prior to August 17, 2008, are dismissed as time-barred.

    4. Hall is granted twenty-one (21) days form the date of this order to file a second amended complaint complying with the requirements of the accompanying memorandum relating to his receipt of false and retaliatory misconducts issued after August 17, 2008.

    5. The second amended complaint must be complete in all respects and must be a new pleading which stands by itself as an adequate complaint, without reference to the original or amended complaints.

6. Failure to submit a second amended complaint in accordance with the requirements of the accompanying memorandum will result in dismissal of this action without prejudice.

7. The Clerk of Court is directed to send Plaintiff two (2) copies of this court's form civil-rights complaint which Plaintiff shall use for his second amended complaint should he chose to file one.

8. Hall's access-to-the-courts claim is dismissed without leave to amend pursuant to 28 U.S.C. § 1915(e)(2) based on his failure to state a claim.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge